IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES F. DICKEY                                                                               PLAINTIFF

      v.                                         CIVIL NO. 14-5005

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

    Plaintiff, James Dickey, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

    Plaintiff protectively filed his applications for DIB and SSI on September 23, 2011, alleging an inability to work since July 27, 2010, due to back problems and anxiety. (Tr. 12, 122-131, 168). For DIB purposes, Plaintiff maintained insured status through December 31, 2013. (Tr. 14, 164). His claim was initially denied on November 29, 2011, and denied upon reconsideration on January 31, 2012. (67-70, 79-81). An administrative hearing was held on August 24, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 28-50). By a written decision dated November 9, 2012, the Administrative Law Judge ("ALJ") found that during the relevant time period Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and hearing problems.

(Tr. 14). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work, "except he is limited to occasional climbing of ladders, ropes and scaffolds, stooping, and crouching; and frequent climbing of ramps and stairs, balancing, kneeling, and crawling. He is also limited to jobs that do not require fine hearing capability." (Tr. 16). With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his past relevant work ("PRW"), but Plaintiff retained the capacity to perform the requirements of representative occupations such as machine tenderer, inspector, and assembler. (Tr. 22, 47-48). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 22).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on November 4, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both Parties have filed appeal briefs, and the case is ready for decision. (Doc. 11; Doc. 13).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's

decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security Disability Benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.

**III. Discussion**

Plaintiff raises the following arguments on appeal: The ALJ erred (1) by not considering all of his impairments in combination, (2) by disregarding his subjective complaints of pain, (3) by improperly weighing the opinion of a treating physician, and (4) by determining an improper RFC. Plaintiff partially attributes all of these errors to an underlying failure to develop the record.

**A. Severe Impairments**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989).

Although some evidence in the record indicated Plaintiff had a mental impairment from anxiety or social phobia, the ALJ determined Plaintiff's only severe impairments were degenerative disc disease of the lumbar spine and hearing problems. (Tr. 14-15).

The evidence at issue is the report of Dr. Stephen Nichols, a state examining psychiatrist, who completed a consultative mental evaluation on January 10, 2012. (Tr. 304-306). Dr. Nichols established that Plaintiff met the criteria for social phobia and a pain disorder and opined Plaintiff was "preoccupied with his pain to the exclusion of other aspects of his life." (Tr. 305). Dr. Nichols believed Plaintiff could not persist on tasks or complete them in an acceptable time because of his preoccupation with his pain. (Tr. 306). He also opined Plaintiff's "ability to participate in social

groups and to relate with supervisors and coworkers is impaired by his social phobia." (Tr. 306). Although Dr. Nichols concluded Plaintiff had mental impairments, he assessed a GAF of 60 and opined Plaintiff could perform all activities of daily living without assistance, cope with the mental demands of basic work tasks, and sustain concentration on basic tasks. (Tr. 306). Dr. Nichols also did not describe the impairments he diagnosed as severe impairments. At step two, the ALJ noted Dr. Nichols's opinions, but determined Plaintiff did not have any severe mental impairments because he had "no problems with concentration or cognitive ability that were noted during the examination," and because Plaintiff interacted in a socially adequate manner with Dr. Nichols. (Tr. 15).

The ALJ addressed Plaintiff's mental impairments again at step four. He explained Dr. Nichols' opinions were partially discounted because the evidence indicated Plaintiff's "mental capabilities [were] not severely affected by his social phobia." (Tr. 20). The ALJ also concluded, in what appears to be dangerously close to substituting his own opinion for a medical conclusion, "the undersigned finds that the claimant's social phobia is primarily due to preoccupation with pain, with the mental aspect of his condition being of a less severe nature." (Tr. 20).

Any error by the ALJ was harmless, however, because the record as a whole shows Plaintiff's social phobia and anxiety were not severe impairments. After partially discounting Dr. Nichols's opinion, the ALJ relied on the opinions of Dr. Winston Brown, a state non-examining consulting psychiatrist, who completed a mental RFC assessment on January 30, 2012, after reviewing Dr. Nichols's evaluation. Dr. Brown opined that Plaintiff's mental impairments were not severe because his anxiety related disorder only resulted in mild limitations and concluded, "while claimant's anxiety may create discomfort, it is not impairing." (Tr. 316, 320, 328). As the ALJ noted, Dr. Brown's opinions were consistent with the notes from Plaintiff's treating physician, Dr. Mark

Bonner, who described Plaintiff's anxiety as stable in February and July 2010 after Plaintiff was prescribed Xanax and Prozac and later described his anxiety as normal at a January 2011 visit. (Tr. 257-258, 262-263).

Plaintiff's lifestyle and testimony also supported the ALJ's step two determination. Plaintiff was a full-time student at a trade school. He described his typical day as waking up early, driving to and from school, and then going home and doing chores. (Tr. 35, 37-38). Plaintiff's high scores on the COMPASS, a standardized college placement exam he sat for on May 7, 2012, and his daily class attendance indicated he could interact with others and adequately complete tasks. (Tr. 220). In his Function Report, Plaintiff did not list any problems with memory, concentration, understanding, following instructions, or completing tasks. (Tr. 184-189). The record shows Plaintiff never saw a psychiatrist other than Dr. Nichols, and he was not referred to a specialist by Dr. Bonner. (Tr. 304).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's decision relating to Plaintiff's mental impairments.

### B. Credibility Analysis

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. It is well established that "credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966

(8th Cir. 2003). The ALJ is entitled to make a factual determination that a claimant's subjective complaints are not credible when contrary objective medical evidence exists. Ramirez, 292 F.3d at 581 (8th Cir. 2002).

A review of the written decision shows the ALJ addressed the Polaski factors. The ALJ noted Plaintiff's claims that his constant back pain was not abated by medication, that his pain worsened with physical activity, that he did not sleep well, that the pain caused him to have to take frequent breaks, and that his medication made him drowsy. (Tr. 16-17). The ALJ found that Plaintiff's complaints were inconsistent with the medical evidence, however, because Plaintiff's claims were inconsistent with his treatment records. For instance, he told his treating neurosurgeon, Dr. James Blankenship, in April 2010 that his back had improved after an epidural injection and physical therapy, and he reported to Dr. Blankenship in October 2011 that hydrocodone reduced his pain to a tolerable level. (Tr. 18-20, Tr. 270-274). Dr. Bonner similarly noted Plaintiff's back pain responded to medication. (Tr. 18-19, 258, 262). The ALJ also discussed how Plaintiff's behavior was inconsistent with his testimony because he discontinued physical therapy sessions in April 2011 without explanation, failed to take anti-inflammatories for his back condition, attended school every day, and reported to Dr. Regina Thurman, his pain management physician, that he could perform all activities of daily living without assistance.[1] (Tr. 19-21). Although the ALJ did not cite Polaski, the framework was applied and the ALJ identified specific and appropriate reasons for discrediting Plaintiff's allegations of disabling pain.

---

[1] Plaintiff argues the ALJ applied a prohibited "sit and squirm test." (Pl. Br. 16). This is not correct. Although the ALJ summarized Plaintiff's testimony, his behavior at the hearing was not mentioned.

Several other facts in the record weighed against Plaintiff's credibility. Plaintiff testified that he was going to school for industrial electrical technology, learning computers and robots, and "going to try to work as an electrical engineer," which indicated his pain was not as disabling as alleged. (Tr. 34-35); See Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994). Plaintiff also told his treating physicians that hydrocodone decreased his pain to a tolerable level, and told Dr. Thurman at his November 2011 visit that anxiety was his biggest concern, not pain. (Tr. 258, 281).

Based upon the foregoing, the undersigned concludes there is substantial evidence to support the ALJ's credibility findings.

**C. RFC**

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393. F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's residual functional capacity is a medical question, Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001), therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect his RFC. Id.

Plaintiff argues the ALJ improperly disregarded Dr. Thurman's Medical Source Statements and errantly concluded that he was capable of performing light work. (Pl. Br. 16-19). He describes

Dr. Thurman as one of his primary treating physicians since 2011, and he argues it defies logic for the ALJ to have disregarded her uncontradicted opinions. (Pl. Br. 18).

Plaintiff's brief characterizes his treatment relationship with Dr. Thurman in a way that is inconsistent with the record. The record shows Dr. Thurman examined Plaintiff at one visit in November 2011. (Tr. 281-285).[2] Dr. Thurman's notes from the visit documented Plaintiff's spine tightness and a decreased lumbar range of motion. (Tr. 281, 284). She assessed chronic lower back and myofascial pain and noted that Plaintiff's overall function, social relationships, and mood were improved by medications. (Tr. 281-282). On July 12, 2012, Dr. Thurman completed a physical and mental Medical Source Statement. (Tr. 336-342). She opined that Plaintiff could lift less than ten pounds; stand less than two hours in a workday; had a limited ability to push and pull; could never climb, kneel, crouch, crawl, or stoop and only occasionally balance; had a limited ability to reach, handle, and finger; had limited ability to tolerate temperature extremes, vibration, or hazards; and stated "nerve damage limits [Plaintiff] in all aspects of movement." (Tr. 336-339). Dr. Thurman also opined Plaintiff had a marked limitation in his ability to remember short simple instructions or carry out these instructions and a marked limitation in his ability to interact appropriately with the public and supervisors, or respond to work pressures or changes. (Tr. 340-341). She commented, "patient unable to safely carry out work instructions" and Plaintiff "takes a variety of strong pain and anxiety narcotics and should not drive or be around machinery." (Tr. 339-340). The ALJ considered Dr.

---

[2] Plaintiff also appears to have had a visit in October 2011 at Dr. Thurman's office, the Brooks Rehab Group, but Plaintiff did not submit medical records from this visit. It appears, based on Plaintiff's disability application, the visit was with Dr. Wayne Brooks, not Dr. Thurman. (Tr. 195, 215-216, 300).

Thurman's opinions, but concluded the limitations she described were not supported by other objective medical evidence and Plaintiff's own reports. (Tr. 20-21).

An ALJ may discount a medical opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1013 (8th Cir. 2000). Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. <u>Id</u>. (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ was not required to give controlling weight to Dr. Thurman's opinions because one evaluation did not establish a long-term treatment relationship. She also imposed more extreme restrictions than Dr. Bonner or Dr. Blankenship, but these restrictions were not supported by her treatment notes. Her opinions on Plaintiff's mental conditions were similarly inconsistent with her treatment notes, in addition to being on an area outside her speciality. She opined that Plaintiff's medications impaired his ability to follow instructions and interact with others, but wrote in her treatment notes that medications improved Plaintiff's overall function and relationships with others and that he did not experience side effects from his medications other than "maybe nausea."(Tr. 281, 340-341).

A review of the record shows Plaintiff's pain was controllable and the ALJ's RFC determination of light work was appropriate. Dr. Patricia Knott noted the forward flexion of Plaintiff's lumbar spine was reduced by only ten-percent on July 28, 2009. (Tr. 233). Dr. Blankenship similarly opined on November 12, 2009, that Plaintiff had an eleven-percent impairment from arthrodesis of the spine. (Tr. 274). Dr. Blankenship later stated in April 2010 that he believed Plaintiff "will never be able to return to his pre-injury job," but Dr. Blankenship's only ongoing restriction was that Plaintiff should not lift more than fifty pounds. (Tr. 270, 273-274). Dr.

Blankenship described Plaintiff's situation as, "he would like to get retrained if his Social Security goes through with a different type of maintenance work, which would be more electrical, and would fall within the confines of a fifty pound weight-lifting restriction." (Tr. 270). The state's non-examining, consulting physician, Dr. Julius Petty, opined in his physical RFC assessment that Plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally, sit and stand six hours in a work day, and occasionally stoop or crouch. (Tr. 292-293). Dr. Petty concluded Plaintiff's RFC was medium with postural limitations, an opinion affirmed by Dr. Judith Forte. (Tr. 297, 311).

Plaintiff's lifestyle also indicated his impairments were not disabling. Plaintiff testified that he attended school each day and then went home and completed his homework and chores, although he relied on pain medication. (Tr. 37-38). He described his limitations as "needing some help with heavy lifting like firewood," and said he was "able to haul scraps of metal to a recycling center for small amounts of money." (Tr. 305). Plaintiff's pain did not prevent him from attending school or completing his daily activities, so long as he maintained his medications. Pain that is controlled by medications is not disabling. See Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009).

Accordingly, the Court finds the ALJ's RFC determination was based on substantial evidence.

### D. Development of the Record

Plaintiff also believes that the ALJ should have ordered a new neurological or psychological consultation since the opinions of Dr. Thurman and Dr. Nichols were discounted. (Pl. Br. 19). The Court disagrees. The ALJ discounted Dr. Thurman's medical source statement because it was not consistent with her treatment records and the other evidence in the record. (Tr. 21). Dr. Nichols's opinions were discounted only to the extent that the ALJ did not adopt a social phobia limitation

because the record as a whole indicated Plaintiff's anxiety disorders were not severe. (Tr. 20). Plaintiff also did not point to any specific prejudice that he suffered. Rather than explaining how the record was not developed, Plaintiff's argument is a disagreement about the ALJ's weighting of the evidence and ultimate conclusion. The Court is satisfied that the ALJ fully and fairly developed the record. See Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

### E. Hypothetical Question

After thoroughly reviewing the hearing transcript, along with the entire evidence of record, the undersigned finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the undersigned finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff retained the capacity to perform the requirements of representative occupations such as small product assembler, bottling line attendant, and inspector/checker, and was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's complaint should be dismissed with prejudice.

Dated this 6th day of January, 2015.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE